IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. MICHAEL DAVID JACKSON, *Defendant*. | Case No. CR-20-108-RAW |

# ORDER

This case arises from Defendant's alleged sexual abuse of his niece F.J. when she was 10 and 11 years old. On October 27, 2020, Defendant was charged with the following:

(1) aggravated sexual abuse in Indian Country in violation of 18 U.S.C. §§ 1151, 1153, 2241(c), and 2246(2)(A);
(2) abusive sexual contract with a child under 12 years in violation of 18 U.S.C. §§ 1151, 1153, 2244(a)(5), and 2246(3);
(3) aggravated sexual abuse in Indian Country in violation of 18 U.S.C. §§ 1151, 1153, 2241(c), and 2246(2)(A);
(4) sexual exploitation of a child/use of a child to produce a visual depiction in violation of 18 U.S.C. §§ 2251(a) and 2251(e);
(5) possession of certain material involving the sexual exploitation of a minor in violation of 18 U.S.C. §§ 1151, 2252(a)(4)(A), and 2252(b); and
(6) possession of certain material involving the sexual exploitation of a minor in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).

Now before the court is Defendant's corrected second motion in limine filed May 21, 2021 [Docket No. 69][1] and the Government's response thereto filed June 1, 2021 [Docket No. 73].

Defendant seeks to exclude: (1) evidence regarding "grooming," (2) evidence regarding F.J.'s forensic interview from January 2019, (3) evidence regarding the January 2019 investigation, (4) evidence from Jorge Pereira, (5) evidence of training methods used to

---

[1] The original motion was filed on May 17, 2021 [Docket No 59]

investigate child sexual abuse and child exploitation cases, (6) testimony regarding Defendant's recorded interviews in February 2019 and March 2020, (7) statements by Annette James, (8) testimony of Kathy Bell, (9) testimony of Jessica Stombaugh, (10) any opinions requiring specialized knowledge, and (11) testimony by Dustin Davis.

### ***Grooming***

Defendant first seeks to exclude use of the word "grooming," any "grooming" evidence, and evidence regarding the general behavior of sex offenders[2] from the Government's case-in-chief. Defendant argues that such evidence is irrelevant, as grooming is not an element of any of the offenses charged and evidence regarding grooming does not tend to make any "fact of consequence" "more or less probable." Defendant further argues that a focus on grooming would be unfairly prejudicial and confusing to the jury.

"Sexual abuse of minors can be accomplished by several means and is often carried out through a period of grooming." *United States v. Isabella*, 918 F.3d 816, 833 (10th Cir. 2019) (citing *United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012). "Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *Id*. (citing, *inter alia*, *United States v. Geotzke*, 494 F.3d 1231, 1235 (9th Cir. 2007)). In *Geotzke*, the court recounted the following as evidence of grooming:

> Redolent of the fun they had together riding horses, fishing, and being massaged, the letters were crafted to appeal to [the minor], flatter him, impress him, and encourage him to come back to Montana 'maybe this summer' when school was out, by promising the same kind of fun and a motorcycle of the minor's own.

---

[2] While Defendant generally discusses "grooming" evidence in his first argument section of his 33-page motion, he then addresses the specific "grooming" evidence he seeks to exclude in his argument sections below.

*Id.*

"Grooming can be established by use of an expert witness who testifies about psychological tactics that are common in cases of child sex abuse." *Id.* at 833, n. 15 (citing *United States. v. Batton*, 602 F.3d 1191, 1202 (10th Cir. 2010) and *Geotzke*, 494 F.3d at 1235. "Expert testimony on grooming can be admissible to explain the '*modus operandi* of sex offenders. The methods sex offenders use are not necessarily common knowledge.'" *Id.* at 845, n. 26 (citing *Batton*, 602 F.3d at 1202).

The court does not agree with Defendant that evidence of grooming is irrelevant in this case. For example, Count One of the Indictment alleges that on December 23, 2019, Defendant caused and attempted to cause F.J. to engage in a sexual act. Count Three of the Indictment alleges that from May 2019 and continuing until on or about December 22, 2019, Defendant sexually assaulted F.J., penetrating her vaginally with his penis. Count Four alleges that Defendant employed, used, persuaded, induced, enticed, and coerced F.J. to engage in sexually explicit conduct for the purpose of producing a visual depiction. The court is not persuaded by Defendant's argument that grooming evidence is relevant in cases with allegations of *attempted* sexual assault, but not in cases with allegations of the completed act(s) of sexual assault. Even if it were so persuaded, the evidence is certainly relevant to Counts One and Four.

The statements made by F.J., her parents, and Defendant during both the January 2019 investigation and the December 2019 investigation are relevant to the offenses charged. For example, F.J. stated Defendant treated her like a princess, got her food and drinks, downloaded video games for her, and got her a heart shaped object that played romantic music. F.J. and Defendant regularly slept in the same bed together. When they were not together, they used Skype to video call each other.

Defendant also argues that evidence of grooming is not necessary, as the alleged victim is his niece, and thus he would naturally be close to her. Such extreme access would not be assumed normal between an uncle and his niece. Moreover, the Government informs the court that during an interview with Jorge Pereira in February of 2019, Defendant stated that "he had known his niece for about one year." Docket No. 73, at 9.[3] Defendant further argues that grooming evidence is not relevant or necessary here because the evidence in this case includes ample physical evidence, including photographs, recordings, SANE examination evidence, and DNA evidence. Nevertheless, despite the ample physical evidence cited by Defendant, Defendant claims F.J. and her mother are lying about the allegations against him.

The evidence of grooming in this case is highly probative and not unfairly prejudicial. It demonstrates the nature of the relationship between F.J. and Defendant and the access Defendant had to F.J. The court rules on the specific evidence, as listed in Defendant's motion, below.

With regard to the word "grooming," at this time, the court does not believe it necessary that the word to be used in direct examination of the Government's witnesses. The court will not, however, prevent the Government from using the word in argument.

***January 2019 Investigation***

In January of 2019, F.J. accused Defendant of sexual assault and later recanted. In a previous sealed motion, Defendant moved to be allowed to introduce evidence of what he referred to as the "Withdrawn Accusation" as evidence of F.J.'s propensity to lie. The Government did not oppose this portion of Defendant's prior motion, and in fact stated that it intends to use statements from the January 2019 investigation in its case-in-chief.

Defendant now argues that while he must be allowed to introduce evidence of the "Withdrawn Accusation" to show F.J.'s propensity to lie, the Government must be prohibited

---

[3] When the court cites to the record it uses the pagination assigned by CM/ECF.

from using the evidence for any reason other than to "remove the sting." The court is not convinced. To be clear, the Government is not seeking to introduce the "Withdrawn Accusation" to prove that the accusation was in fact true. It seeks to introduce statements made by F.J., her parents, and Defendant during the investigation that took place after the "Withdrawn Accusation" to demonstrate the relationship between Defendant and F.J. and the access Defendant had to F.J.

During her January 2019 forensic interview, F.J. stated that Defendant "adored" her and called her "little angel" and "little cutesy." She stated that Defendant told her that she is the only reason he has not moved out of town. She stated that she stayed the night with Defendant multiple times per week and slept in the same bed. She stated that they played video games together and that she would snuggle with him to get him to stop crying. She stated that he protected her and helped her get out of trouble. She stated that when Defendant got mad, he broke things and that she saw him break a door and a mirror. She stated that she hid under the covers when he broke the door. She stated that he broke the mirror when he was standing up for her. The evidence the Government seeks to introduce is relevant, highly probative, not unfairly prejudicial to Defendant, and will not confuse the jury. The motion is denied as to the January 2019 Investigation, including the forensic interview of F.J.

**<u>Jorge Pereira</u>**

Defendant seeks to exclude the polygraph examination and testimony by Jorge Pereira, the polygraph examiner, arguing that the polygraph is not admissible and that the evidence is not relevant. The Government informs the court that it will not introduce the polygraph examination and that, consistent with Rule 701,[4] Mr. Pereira will testify as to statements Defendant made

---

[4] "Although a law-enforcement officer's testimony based on knowledge derived from the investigation of the case at hand is typically regarded as lay testimony, opinion testimony

during the interviews before and after the polygraph. He will not testify about the polygraph. The Government states that Mr. Pereira also will not opine as to the veracity of Defendant's statements.

During the interviews, Defendant stated that he believed F.J. felt a "deep connection" with him and that he cared about her more than her mother. Defendant stated that F.J. was patient and kind to him and not petty like other people. Defendant stated that F.J. would come to his house every weekend and that when she visited, they spent time in his room with the door closed playing video games and talking. Defendant's statements during the interviews demonstrate the nature of the relationship between Defendant and F.J. and Defendant's access to F.J. Further, Defendant's statements corroborate F.J.'s statements. Defendant's statements to Mr. Pereira are relevant, highly probative, not unfairly prejudicial to Defendant, and will not confuse the jury.

Additionally, as the Government argues, the testimony is admissible pursuant to Rule 801(d)(2)(A). The motion is moot with regard to the polygraph examination and denied as to Mr. Pereira's testimony about his knowledge derived from the investigation of this case.

### *Training and Methods Used to Investigate*

Defendant seeks to exclude Agent Deppner's testimony regarding his training and methods used to investigate child sexual abuse and child exploitation cases. Defendant argues that a general discussion of the techniques law enforcement deems to be applicable to these investigations is not relevant. He argues that this would only become relevant if he objected to Agent Deppner's status as an expert.

---

premised on the officer's professional experience as a whole is expert testimony." *United States v. Cristerna-Gonzalez*, 962 F.3d 1253, 1259 (10th Cir. 2020) (citations omitted).

Defendant also argues that Agent Deppner's testimony would be similar to the testimony in *United States v. Hill*, 749 F.3d 1250 (10th Cir. 2014) that the Tenth Circuit found to be plain error. In *Hill*, the agent provided expert testimony as to the defendant's credibility, which may not be addressed by an expert testifying under Rule 702. *Id*. The Government informs the court that Agent Deppner will not testify as to Defendant's credibility; thus, *Hill* is not applicable.

The Government states that Agent Deppner will provide lay testimony regarding the January 2019 and December 2019 investigations, including why certain steps were taken during the course of both investigations, necessarily implicating inquiry into how he investigated this particular case. The Government assures the court that Agent Deppner's testimony will be limited to his knowledge derived from the investigation of this case and will not include scientific, technical, or other specialized knowledge. The motion, therefore, is denied at this time with regard to Agent Deppner's testimony. As requested, the court will reserve any ruling on the relevancy of his testimony until trial.

### *Testimony Regarding Defendant's Recorded Interviews*

Defendant seeks to exclude testimony about his recorded statements. He argues that his statements made have limited or minimal relevance because he denied having any illegal contact with F.J. The court disagrees. As noted above, Defendant's statements are relevant and highly probative to show the relationship he had with F.J. and the access he had to her. Defendant also argues the testimony about the recordings violate the best evidence rule and that the testimony would be cumulative.

The Government informs the court that it intends to seek to admit the relevant, admissible portions of Defendant's statements contained in the recordings at trial. The Government's witnesses will testify only to evidence that has not already been established by other evidence. Accordingly, the motion is denied as to testimony regarding Defendant's recorded interviews.

*Annette James*

The Government intends to call Annette James to testify regarding the SANE examination she performed on F.J. on December 26, 2019.  Defendant states that the Government has provided Ms. James' report and argues that to the extent Ms. James testifies as an expert, she should be subject to cross-examination on that basis.  The Government states that it intends to call Ms. James as a lay witness only.[5]  The motion is moot.  Of course, if the Government elicits expert testimony, Ms. James will be subject to cross-examination on that basis.

*Kathy Bell*

The Government intends to call Kathy Bell as an expert to testify about SANE examination generally.  Defendant does not object to this opinion, but seeks to exclude her testimony about this particular case, which the Government states it no longer intends to elicit.  The motion, therefore, is moot as to this issue.   The court further finds that Ms. Bell's 25-page C.V.[6] listing her education and experience is more than sufficient to show that her testimony regarding SANE examinations generally has a reliable basis in the knowledge and experience of her discipline, and a *Daubert* hearing is not necessary.[7]

Defendant further states that while he has notice about Ms. Bell's opinions, he has not received an expert report.  "Rule 16 does not require experts in criminal cases to provide written reports explaining their opinions to or to make a written proffer containing the information

---

[5] The Government states that while it could call Ms. James to testify both as a fact and expert witness, to avoid any improprieties, it will call the examining nurse to provide lay testimony only and Kathy Bell to provide expert testimony on SANE examinations generally.
[6] Docket No. 73-1.
[7] "A *Daubert* hearing is 'not specifically mandated' and a judge may fulfill his gatekeeper obligation when asked to rule 'on an objection during trial . . . so long as the court has sufficient evidence to perform the task' of ensuring reliability and relevance." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (citation omitted).

required under the civil rules." *United States v. Nacchio*, 555 F.3d 1234, 1262 (10th Cir. 2009) (citation omitted).

### *Jessica Stombaugh*

The Government intends to call Jessica Stombaugh to testify as to the general dynamics of child sexual abuse and the disclosure process in child sexual abuse cases based upon her education, training, background, and experience. The Government states that it does not intend to ask Ms. Stombaugh to explain child sexual abuse accommodation syndrome ("CSAAS"), nor does the Government believe it is necessary for Ms. Stombaugh to rely on the CSAAS testimony Defendant seeks to exclude. Accordingly, Defendant's objection to CSAAS testimony is moot.

The court further finds that Ms. Stombaugh's 8-page C.V.[8] listing her education and experience is more than sufficient to show that her testimony regarding the general dynamics of child sexual abuse and the disclosure process in child sexual abuse cases has a reliable basis in the knowledge and experience of her discipline, and a *Daubert* hearing is not necessary.

Defendant states that it is not clear whether Ms. Stombaugh's testimony is relevant to this case and requests that the court evaluate, after F.J. and her parents have testified, whether there is any need for an expert on the "disclosure process" at all. The court will do so. Defendant also states that while he has notice about Ms. Stombaugh's opinions, he has not received an expert report. As stated above, an expert report is not required here.

### *Opinions Requiring Specialized Knowledge*

Defendant seeks to exclude expert opinions that have not been disclosed to the defense, arguing that the Government appears to be attempting to set up all of the law enforcement witnesses as experts, as they will testify regarding their training and experience. The Government states that the law enforcement witnesses will give lay opinion pursuant to Rule

---

[8] Docket No. 73-2.

701. This motion is moot. To the extent defense counsel has objections to particular testimony by law enforcement witnesses, those will be addressed at trial.

### *Dustin Davis*

The Government intends to call Cherokee Nation Deputy Marshal Dustin Davis to testify as to his own observations of the general appearance and demeanor of F.J., her mother, and her father during his interview of them on December 25, 2019. Defendant argues that Deputy Davis' testimony may be irrelevant, hearsay, and/or cumulative. As the Government argues, the testimony is relevant. The Government also assures the court that there will be no hearsay. The court will make determinations regarding cumulative evidence at trial. The motion, therefore, is denied.

### *Summary*

Accordingly, Defendant's motion [Docket No. 69] is hereby DENIED in part and MOOT in part as stated above. Of course, the court withholds its rulings as to any cumulative evidence until trial.

**IT IS SO ORDERED** this 17th day of June, 2021.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**